# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>COLLIER LAND & COAL DEVELOPMENT, LP,<br><br>    Debtor. | Bankruptcy Case No. 10-22059-MBM<br><br>Chapter 11 |
| PARKVALE BANK,<br><br>    Movant,<br><br>v.<br><br>COLLIER LAND & COAL DEVELOPMENT, LP,<br><br>    Respondent. | Doc. No. _____<br><br>Hearing Date and Time: |

**PARKVALE BANK'S MOTION (1) TO PROHIBIT OR CONDITION THE USE OF CASH COLLATERAL; (2) TO COMPEL ADEQUATE PROTECTION; AND/OR (3) FOR RELIEF FROM THE AUTOMATIC STAY**

Parkvale Bank, pursuant to 11 U.S.C. §§ 361, 362, and 363, files this Motion (1) To Prohibit or Condition the Use of Cash Collateral; (2) To Compel Adequate Protection; and/or (3) For Relief From The Automatic Stay:

**SUMMARY OF ARGUMENT**

Parkvale Bank loaned the Debtor approximately $3,000,000 to acquire equipment for its strip mining operation. Debtor defaulted pre-petition by failing to make payments when due. Debtor filed suit against the Bank and sought an injunction to prevent the Bank from enforcing the defaults. Debtor failed to obtain the injunction. The Bank then set off against $845,000 in an account at the Bank pledged to secure the loans, entered judgment against the Debtor and levied on the equipment collateral. This bankruptcy followed shortly thereafter.

The Bank's judgment created a first lien on all of the Debtor's real property in Allegheny County.  That judgment lien also attaches to the coal that the Debtor is currently mining.  The coal and its proceeds are the Bank's cash collateral.  The Bank does not consent to the use of its cash collateral.

Since this case was filed on March 25, 2010, the Debtor has not made a single payment to the Bank.  In fact, the Debtor has not made a voluntary payment to the Bank since December, 2009.  As of June 11, 2010, the Bank is owed $1,616,495.44.  The equipment is being used to mine coal.  This causes significant wear and tear and rapidly reduces the value of the equipment.  Absent contractual note payments, which amortize the Debtor's loans to account for the depreciation of the value of the equipment, the Bank is not adequately protected.  Furthermore, a review of the only operating report that has been filed so far in this Case, the Debtor has not yet generated any money from the sale of coal and that all of the Debtor's expenses have been paid by loans from partners that were not authorized by Section 364 of the Code.

## PARTIES

1. Parkvale Bank (the "**Bank**") is a Pennsylvania state chartered bank with a principal place of business at 4220 William Penn Highway, Monroeville, PA  15146.

2. Collier Land & Coal Development, LP (the "**Debtor**") is a Pennsylvania limited partnership with a last known business address of 633 Route 51 South, Jefferson Hills, Pennsylvania 15025.  The Debtor filed a voluntary petition under title 11 on March 25, 2010 (the "**Petition Date**").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 157(a) and 1334.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 157(a), 1408 and 1409.

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

### A. The Loans and Judgment

6. The Bank made three loans to the Defendant (the "**Loans**") pursuant to the following promissory notes:

    a. Promissory Note dated October 24, 2008, in the original principal amount of $1,700,000.00 ("**Note-1**");

    b. Promissory Note dated November 26, 2008, in the original principal amount of $725,000.00 ("**Note-2**"); and

    c. Promissory Note dated March 30, 2009, in the original principal amount of $545,000.00 ("**Note-3**", and together with Note-1 and Note-2, collectively the "**Notes**"). True and correct copies of the Notes are attached hereto and incorporated herein as Exhibits "A" "B" and "C".

7. To secure the Loans, the Debtor executed and delivered to the Bank, *inter alia*, three Commercial Security Agreements:

    a. Commercial Security Agreement dated October 24, 2008 ("**Security Agreement-1**");

    b. Commercial Security Agreement dated November 26, 2008 ("**Security Agreement-2**"); and

    c. Commercial Security Agreement dated March 30, 2009 ("**Security Agreement-3**", and together with Security Agreement-1 and Security Agreement-2, collectively, the "**Security Agreements**"). True and correct copies of the Security Agreements are attached hereto and incorporated herein as Exhibits "D" "E" and "F".

8. In addition, in conjunction with each of the Notes, the Debtor executed and delivered to the bank certain Assignments of Deposit Accounts (collectively the "**Assignments**") simultaneously with each of the Notes whereby the Debtor granted the Bank, *inter alia*, an assignment of the Money Market Investment Account # 3511578 (the "**MMA**"). A true and

correct copy of each of the Assignments is attached hereto and incorporated herein as Exhibits "G" "H" and "I".

9. Prior to the Petition Date, the Bank exercised its rights under the Assignments and applied the $845,000 of the funds in the MMA to the Loans. A small amount of accrued interest remains in the MMA.

10. The Security Agreements grant the Bank a security interest in various pieces of equipment and vehicles used by the Debtor in its mining operations, including but not limited to the following

    a. One (1) Dressta Crawler Tractor w/cab - Serial #33613

    b. One (1) Hyundai Hydraulic Excavator - Serial #NB0310187

    c. One (1) Moxy 35 Ton Nontitled Rock Truck - Serial #513134

    d. Two (2) Sakai Padfoot Drum Rollers - Serial #10158 and Serial #10157

    e. One (1) Dressta Dozer - Serial #75039

    f. One (1) Holland Loader - Serial #N8M480469

    g. One (1) D Roller - Serial #30209

    h. One (1) Topcon Model 8110 3D/GPS

    i. One (1) Topcon Model 8051GA

    j. One (1) Moxy 36 Ton Truck Model MT3611 - Serial #410308

    k. One (1) Moxy 36 Ton Truck Model MT3611 - Serial #410309

    l. One (1) Gorman Rupp Diesel Trash Pump Model 14C2-F3L - Serial #128 5164N

    m. One (1) Moxy 40 Ton 6X6 Dump Truck - Serial #513136

    n. One (1) Finn Hydroseeder Model T75-T - Serial #SE-353

    o. One (1) Gradall Hydraulic Excavator Model XL4200111 - Serial #4200000022

        p. One (1) Hyundai Wheel Loader Model 770-7A - Serial #LB0410480

        q. One (1) 90" Power Rake/Auger - Serial #54396/193371, LA08144

        r. One (1) PT-15 Tirewasher - Serial #LY07-100CDN

Collectively, the "**Equipment**".

11. The Equipment is used to mine coal, where it rapidly decreases in value due to the wear and tear of mining operations.

12. The Bank perfected its security interest in the Equipment by filling UCC-1 Financing Statements with the Secretary of State. True and correct copies of the UCC-1 Financing Statements are attached hereto and incorporated herein as Exhibit "J".

13. The last voluntary payment that the Debtor made under the Notes was in December 2009.

14. On or about March 12, 2010, the Bank notified the Debtor of the Default under the Notes and, pursuant to its rights under the Notes, demanded immediate payment of the Notes in full.

15. The Debtor failed to cure the defaults under the Notes, and or about March 19, 2010, the Bank entered judgment by confession against the Debtor in a total amount of $1,694,337.61 plus accrued interest, fees and costs of suit (the "**Judgment**"). The Judgment constitutes a lien upon all of the Debtor's real estate in Allegheny County.

16. As of the Petition Date, the outstanding amount of the Loans was $1,580,336.07, consisting of the following:

| Obligation | Principal | Accrued Interest | Late Fees | Unpaid Loan Fees | Total | Per Diem |
|---|---|---|---|---|---|---|
| Note -1 | $850,370.46 | $29,177.42 | $9,722.76 | $27,022.40 | $916,293.04 | $268.69 |
| Note-2 | $311,644.28 | $9,842.65 | $3,436.98 | $84.00 | $325,007.97 | $95.22 |
| Note-3 | $326,174.32 | $10,018.09 | $2,758.65 | $84.00 | $339,035.06 | $99.66 |

5

Plus professional fees, expenses and accruing interest (the "**Bank Debt**").

**C.     The Bankruptcy**

17.     Since the Petition Date, the Debtor has only submitted the April 2010 Monthly Operating Report ("**April MOR**"). A true and correct copy of the April Monthly Operating Report is attached hereto and incorporated herein as Exhibit "K".

18.     According to the April MOR, the Debtor had negative income for April 2010.

19.     While Debtor claims to be mining coal, its April MOR reveals no income from the sale of coal (or any other business, for that matter). Debtor has apparently paid operational expenses from post-petition loans from its limited partners.

## RELIEF REQUESTED

**A.     Prohibit or Condition the Use of Cash Collateral and Collateral**

20.     The Bank has a security interest in, and liens upon, the Equipment by virtue of the UCC-1 Financing Statements; and a judgment lien on all real property of the Debtor by virtue of the Confession of Judgment entered against the Debtor on or about March 19, 2010.

21.     Under Pennsylvania Rules of Civil Procedure Rule 3023, "a judgment when entered in the judgment index shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered." Pa.R.Civ.P. 3023.

22.     The judgment lien attaches to the land itself and the coal located under the real estate. See In re Wagner, 30 B.R. 554 (Bankr. W.D.Pa. 1983) (judgment liens attached to the land and all coal rights); Coolbaugh v. Leihigh & Wilkes-Barre Coal Co., 62 A. 94 (1905) (lessor of coal retained interest in the coal to which a judgment lien would attach).

23. The Judgment, while entered within 90 days of the Petition Date, is not avoidable because, if the Debtor were liquidated in a chapter 7, all of the Debtor's creditors would be paid in full. Accordingly, for this reason, Debtor cannot make out a *prima facie* preference case under 11 U.S.C. § 547(b).

24. The coal is the Bank's collateral and is or will become the Bank's "Cash Collateral" pursuant to the Bankruptcy Code.

25. The Bank does not consent to the use of its Cash Collateral.

26. The Debtor has not obtained authorization from this Court to use cash collateral.

27. The Debtor is using and disposing of the Bank's Equipment and Cash Collateral in furtherance of its mining operations causing the Collateral to diminish in value to the detriment of the Bank. The Bank believes that the Debtor is not replacing the Cash Collateral dollar for dollar, but is instead depleting the Cash Collateral to the detriment of the Bank.

28. The Debtor has failed to propose or provide any form of adequate protection, despite requests from the Bank that it do so.

29. The Bank's interests and rights in the Equipment are being irreparably impaired as the Equipment will continue to decrease in value as it is utilized in the continued operations of the Debtor.

30. The Debtor, as a debtor-in-possession and exercising the rights of the trustee under 11 U.S.C. § 1107(a), has the burden of demonstrating that the Bank is adequately protected. 11 U.S.C. § 363(p)(1).

31. Unless the Bank is provided acceptable adequate protection, the Debtor must be prohibited from using the Equipment and Cash Collateral.

7

B. **Adequate Protection**

32. To the extent that the Debtor is authorized to continue to use the Equipment and Cash Collateral, the use should be conditioned upon granting adequate protection to the Bank which must, at a minimum, include the following:

    a. Adherence by the Debtor to an operating budget acceptable to the Bank which budget shall be submitted and updated monthly.

    b. Monthly adequate protection payments to the Bank in the amount of $54,500 per month (the approximate amount of the monthly payments due under the Notes)

    c. Replacement liens in the Equipment and on Cash Collateral, which shall be first and prior liens;

    d. Maintenance of adequate insurance on the Equipment and on the real estate naming the Bank as loss payee;

    e. Immediate redress in the event of a default by Debtor under its obligations upon which cash collateral use is conditioned; and

    f. Provide the Bank with a super-priority administrative claim to the extent the Bank suffers a failure of adequate protection or the value of the Equipment decreases during this Bankruptcy Case.

33. If the Debtor is unable to provide the Bank with, at a minimum, the adequate protection listed above, the Debtor should be prohibited from using the Collateral or Cash Collateral.

C. **Relief From Stay**

34. To the extent that the Debtor is prohibited from using the Collateral and/or Cash Collateral due to the Debtor's inability to provide the Bank with adequate protection, the Bank respectfully requests that the Court grant it relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit the Bank to pursue its rights and remedies under applicable non bankruptcy law with respect to the Collateral.

35. According to the April MOR, the Debtor has not generated any accounts receivable from the sale of coal nor has it received one single payment for its coal.

36. The Debtor's case to date has been funded by cash on hand when the bankruptcy was filed and by loans from partners. These partner loans were not authorized by 11 USC § 364.

37. 11 U.S.C. § 362(d) authorizes this Court to grant a party in interest relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

38. If the Debtor cannot provide the Bank adequate protection including monthly payments as provided for in the Notes, cause exists under 11 U.S.C. § 362(d)(1) to grant the Bank relief from stay.

39. Specifically, the Bank is not adequately protected for the following reasons:

   a. The Equipment is declining in value as it is used in coal mining operations;

   b. Coal is being removed from the Debtor's real estate, thus decreasing the value of the land. For reasons unknown to the Bank, that coal is not generating cash flow back to the Bank; and\

   c. The value of the estate is continuing to be diminished through mining operations. Those operations are not generating any cash flow, let alone cash flow sufficient to cover the actual costs of operations and to service the Debtor's indebtedness. If operations are allowed to continue in this fashion, there is a significant risk that the Bank will not be adequately protected because the value of the estate will be adversely impacted by continuing losses.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, Parkvale Bank respectfully requests that this Honorable Court (i) enter an order which conditions or prohibits the use of the Bank's Collateral; and (ii) grant the Bank relief from the automatic stay pursuant to 11 U.S.C. § 362(d); and (iii) grant the Bank such other relief as is just and proper.

Respectfully Submitted:

TUCKER ARENSBERG, P.C.

*/s/ Michael A. Shiner*
Michael A. Shiner, Esquire
Pa. I.D. No. 78088
Christopher W. Cahillane, Esquire
Pa. I.D. No. 75977
Christopher L. Borsani, Esquire
Pa. I.D. No. 205819
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212

*Counsel for Plaintiff, Parkvale Bank*